# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

RORY LEE ZIRKELBACH,

Defendant.

Case No. CR13-1001

ORDER FOR PRETRIAL DETENTION

On the 16th day of January, 2013, this matter came on for hearing on the Government's request to have the Defendant detained prior to trial. The Government was represented by Assistant United States Attorney Daniel C. Tvedt. The Defendant appeared personally and was represented by his attorney, Jill M. Johnston.

## I. RELEVANT FACTS AND PROCEEDINGS

On January 9, 2013, Defendant Rory Lee Zirkelbach was charged by Indictment (docket number 2) three counts of attempting to manufacture methamphetamine. At the arraignment on January 14, 2013, Defendant entered a plea of not guilty and trial was scheduled before Chief Judge Linda R. Reade on March 18, 2013.

At the hearing, Dubuque Police Lieutenant David Haupert testified regarding the circumstances underlying the instant charges.[1] On May 31, 2012, the Dubuque Fire Department and law enforcement responded to a fire at Defendant's residence.[2] At the scene of the fire, law enforcement found items consistent with the "one-pot" method of manufacturing methamphetamine. Defendant was interviewed by law enforcement, and while not admitting to attempting to manufacture methamphetamine on the day of the fire,

---

[1] Haupert is currently assigned to the Dubuque Drug Task Force.

[2] Defendant resided with his father in one-half of a duplex.

1

he did admit to manufacturing methamphetamine using the "one-pot" method in his residence six weeks prior to the fire.

Following the fire on May 31, Defendant resided at the Midway Hotel in Dubuque, Iowa. On September 5, 2012 — the date Defendant vacated the hotel — management for the hotel discovered a stolen television in Defendant's room. Hotel management contacted law enforcement. While investigating the stolen television, officers observed in plain view drug paraphernalia in the room that had been occupied by Defendant at the hotel. In a search of the room, law enforcement found items consistent with the "one-pot" method of manufacturing methamphetamine. The items were sent to a lab for testing. The results of the testing showed that the items were sufficient to make 5 or more grams of pure methamphetamine.

On November 19, 2012, officers were dispatched to a trailer owned by Defendant. Law enforcement received a tip that someone was going to purchase methamphetamine at Defendant's trailer. Officers saw Defendant driving away from the trailer, and arrested him for driving with a revoked license. While near the trailer, officers smelled an odor consistent with the manufacture of methamphetamine. Officers also observed in plain view items that were consistent with the manufacture of methamphetamine. A search warrant was obtained and executed at the trailer, and officers found evidence of 2-3 "one-pot" cooks in the trailer.

According to the pretrial services report, Defendant is 43 years old. He has lived his entire life in Dubuque, Iowa. His parents and half-brother also reside in Dubuque. Defendant has never been married. He is currently in four-year relationship with Kelli Youtzy and they have a three-year old child together. Defendant also has a ten-year old child from another relationship. She lives with her mother in nearby Key West, Iowa.

Defendant told the pretrial services officer that he has been employed as a laborer at Perfection Concrete in Bellevue, Iowa for the past three years. However, he has been laid-off since May 2012. Defendant was diagnosed with Tourette's Syndrome in 1990, but is not prescribed any medication for this condition. He reports no present or past mental

or emotional health concerns. Defendant told the pretrial services officer that he has been a regular user of methamphetamine since 1997. He further stated that he had been using methamphetamine on daily basis for the two months prior to his arrest on state charges in November 2012.

Defendant has an extensive criminal record. Beginning in 1987, at age 18, Defendant was arrested for possession of alcohol. In 1988, Defendant was arrested four times for fourth degree theft, possession of a controlled substance, carrying a concealed weapon, third degree theft by fraud, and possession of alcohol. In 1989, Defendant was arrest four more times for driving with a suspended license (three times), public intoxication, and resisting arrest.

In 1990, Defendant was arrested in Wisconsin for burglary, entry into a locked coin box, and theft. According to the pretrial services report, he received "12 months custody." In 1991, Defendant was arrested for second degree burglary. He apparently was placed on probation. In 1992, Defendant was arrested five times for driving with a suspended license (twice), public intoxication (twice) and interference with official acts. In 1994, Defendant was arrested twice, for public intoxication and interference with official acts. The disposition of most of the early misdemeanors is unknown. Also in 1994, Defendant was charged and later convicted of driving while barred, habitual offender.

In August 1995, Defendant was charged with driving while barred, driving with a suspended license, and failure to yield to an emergency vehicle. In September 1995, while the August charges were pending, Defendant was charged with driving while barred, habitual offender, interference with official acts, and OWI. In June 1996, while both 1995 charges remained pending, Defendant was charged with a probation violation. On August 22, 1996, Defendant was sentenced on the September 1995 and June 1996 charges, and the August 1995 charge was dismissed.

In July 1997, while on probation, Defendant was charged with domestic abuse assault. In September 1997, while on probation, Defendant was charged with possession

3

of a controlled substance, driving while barred, and driving with a suspended license. In October 1997, while on probation, Defendant was charged and later convicted of two felony drug offenses. On June 29, 1998, he was sentenced to two concurrent 10-year prison terms, and his probation in the September 1997 charge was revoked. He was paroled in January 2000, and discharged from parole in February 2002. In 2001, while on parole, Defendant was charged and later convicted of disorderly conduct.

On April 10, 2002, Defendant was charged in Illinois with possession of drug paraphernalia and possession of a controlled substance. On April 21, 2002, while the April 10 charges were pending, Defendant was charged with possession/manufacture of methamphetamine. On June 6, 2002, while the April charges remained pending, Defendant was charged with possession of a controlled substance and possession of drug paraphernalia. On December 12, 2002, while all of his other 2002 charges were pending, Defendant was charged with first degree theft. On March 3, 2003, he was sentenced to 10 years in prison on the theft charge. On October 3, 2003, he was sentenced in Illinois to 3 years in prison on the possession/manufacture of methamphetamine charge. He was paroled to detainer in Illinois on August 31, 2004, and then paroled in Iowa on October 18, 2005. His sentence was discharged in Illinois on November 9, 2006 and in Iowa on July 8, 2007.

In May 2005, while on parole, Defendant was charged with prior forcible felony. The disposition of that case is unknown. In 2007, Defendant was charged and later convicted of disorderly conduct. In 2008, Defendant was charged and later convicted of purchasing less than 7,500 mg of pseudoephedrine. In 2009, Defendant was charged and later convicted of domestic abuse assault causing bodily injury/mental illness. He was given 2 years probation. In March 2010, a violation of probation was filed against Defendant, and he was sentenced to 35 days in jail. In July 2010, another violation of probation was filed against Defendant, and he was sentenced to 180 days in jail.

On January 5, 2010, Defendant was charged with possession of drug paraphernalia. That charge was later dismissed. On January 21, 2010, while the January 5 charge was

4

pending, Defendant was again charged with possession of drug paraphernalia. That charge was also dismissed. On that same date, Defendant was charged in a separate case with possession of a controlled substance. Defendant was given 1 year probation.

On September 6, 2012, Defendant was charged in two separate cases with third degree burglary and trespass. Those charges are related to Count 2 of the Indictment and have been dismissed. On November 19, 2012, Defendant was charged with a controlled substance violation, possession of precursors, and possession of a controlled substance (two counts). Those charges are related to Count 3 of the Indictment and have been dismissed.

## II. DISCUSSION

The release or detention of a defendant pending trial is governed by the Bail Reform Act of 1984, 18 U.S.C. § 3142. In *United States v. Salerno*, 481 U.S. 739 (1987), the United States Supreme Court upheld the constitutionality of the Bail Reform Act of 1984, while noting that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Id.* at 755.

### A. Legal Standard to be Applied

If the government moves to have a defendant detained prior to trial, the court must undertake a two-step inquiry. *United States v. Friedman*, 837 F.2d 48, 49 (2d Cir. 1988). The Court must first determine by a preponderance of the evidence that the case involves an offense listed in 18 U.S.C. § 3142(f)(1), or that the defendant presents certain risk factors, as identified in § 3142(f)(2). *Id.* Once this determination has been made, the court then determines, pursuant to § 3142(e), whether any condition or combination of conditions will reasonably assure the defendant's appearance at trial and the safety of the community. *Id.*

Regarding the first step, pretrial detention is not authorized unless the Court finds that at least one of seven enumerated circumstances is applicable. 18 U.S.C. § 3142(f). The first five enumerated circumstances refer to "offense types," such as crimes of violence, offenses punishable by life imprisonment, serious drug offenses, felonies

committed by repeat offenders, and felonies involving minor victims or guns. 18 U.S.C. § 3142(f)(1)(A-E). The last two enumerated circumstances where a hearing is authorized involve "risk factors," such as a serious risk of flight, or a serious risk the defendant will obstruct justice. 18 U.S.C. § 3142(f)(2)(A-B).

Regarding the second step, if following a hearing "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community," then the judicial officer must order the defendant detained pending the trial. 18 U.S.C. § 3142(e). A finding that no condition or combination of conditions will reasonably assure the safety of the community must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f). A finding that no condition or combination of conditions will reasonably assure the defendant's appearance, however, must only be established by a preponderance of the evidence. *United States v. Orta*, 760 F.2d 887, 891 (8th Cir. 1985).

In determining whether any condition or combination of conditions will reasonably assure the defendant's appearance as required and the safety of the community, the Court must take into account the available information concerning (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including (a) the defendant's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, and (b) whether, at the time of the current offense or arrest, the defendant was on probation, parole, or other pretrial release; and (4) the nature and seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). *See also United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003).

The Government has the burden of proof in this regard. It is aided in certain cases, however, by a rebuttable presumption found at 18 U.S.C. § 3142(e). For example, if the Court finds there is probable cause to believe that the person committed a drug offense for

which a maximum term of imprisonment of ten years or more is applicable, or possessed a firearm in furtherance of a drug trafficking crime, or committed certain specified offenses involving a minor victim, then there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. 18 U.S.C. § 3142(e)(A)(B) and (E). In a "presumption case," the defendant bears a limited burden of production – not a burden of persuasion – to rebut the presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight. *Abad*, 350 F.3d at 797 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). Once the defendant has met his burden of production relating to these two factors, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the court. *Id.* See also *United States v. Jessup*, 757 F.2d 378, 382-84 (1st Cir. 1985).

### B. Analysis

Turning to the facts in the instant action, Defendant is charged with three counts of attempting to manufacture methamphetamine. Accordingly, regarding the first step in the analysis, the Court finds that detention is authorized pursuant to § 3142(f)(1)(C).

Regarding the second step, there is a rebuttable presumption in favor of detention. The weight of the evidence against Defendant is strong. In May 2012, law enforcement was called to the scene of a fire at Defendant's residence. Items consistent with the manufacturing of methamphetamine were found at the scene of the fire. Due to the fire, Defendant was displaced from his residence and lived at a hotel. On the date that he vacated the hotel, management of the hotel found a stolen television in Defendant's room. Law enforcement was alerted, and during their investigation officers found items consistent with the manufacturing of methamphetamine in Defendant's hotel room. In November 2012, law enforcement was called to Defendant's trailer. Again, officers found items consistent with the manufacturing of methamphetamine in Defendant's trailer.

As a general proposition, the manufacturing of drugs constitutes a general danger to the community. The facts of this case are illustrative of that danger. In attempting to

manufacture methamphetamine, it appears Defendant started a serious fire in his residence. Because Defendant's residence was a duplex, the fire constituted a significant danger to his neighbor and her two-year old child. Defendant has multiple convictions for controlled substance violations. He also has a history of committing additional offenses while on pretrial release, probation, and parole. If convicted on Count 2 of the Indictment, Defendant faces a mandatory minimum 10-year prison sentence. If he is found to be a career offender, Defendant faces a sentencing range of 10 years to life in prison. This is a factor regarding the likelihood he will appear at trial. Based on the serious nature of the offense, all of the facts and circumstances, and the rebuttable presumption, the Court finds that there is no condition or combination of conditions that will reasonably assure the safety of the community or Defendant's appearance for court proceedings. Therefore, the Court finds that Defendant should be detained pending trial.

Based on the legal standards set forth above, and considering the evidentiary factors found in 18 U.S.C. § 3142(g), the Court finds the Government has met its burden of proving by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Defendant as required. The Court further finds by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if Defendant is released. Therefore, pursuant to 18 U.S.C. § 3142(e), the Court concludes that Defendant should be detained prior to trial. Defendant was advised in open court of his right to file a motion with the District Court for revocation or amendment of this Order.

### III. ORDER

IT IS THEREFORE ORDERED as follows:

1. The Defendant is committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal.

2. The Defendant shall be afforded reasonable opportunity for private consultation with counsel.

3. On order of a Court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility in which the Defendant is confined shall deliver the Defendant to the United States Marshal for the purpose of an appearance in connection with a court proceeding.

4. The time from the Government's oral motion to detain (January 14, 2013) to the filing of this Ruling (January 18, 2013) shall be excluded in computing the time within which the trial must commence pursuant to the Speedy Trial Act. 18 U.S.C. § 3161(h)(1)(D).

DATED this 18th day of January, 2013.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA