# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

vs.

RORY ZIRKELBACH,

    Defendant.

No. 13-CR-1001-CJW-MAR

**ORDER**

## I. INTRODUCTION

This matter is before the Court on defendant's amended motion for compassionate release filed on April 6, 2021. (Doc. 61). On April 13, 2021, the government timely filed a resistance. (Doc. 71). On April 20, 2021, defendant timely filed a reply. (Doc. 73). On June 2, 2021, defendant filed a supplement to his motion. (Doc. 74). For the following reasons, the Court **denies** defendant's motion.

## II. RELEVANT BACKGROUND

On May 31, 2012, defendant attempted to manufacture methamphetamine on the second floor of his residence, a duplex in Dubuque, Iowa. (Doc. 28, at 4). At some point in the manufacturing process, a fire erupted. (*Id.*). After defendant unsuccessfully attempted to extinguish the fire, his then-girlfriend fled the residence through the front door. (*Id.*). Defendant's girlfriend then reentered the residence, locked the front door from the inside, and the pair of them exited through the back door. (*Id.*). Neither defendant nor his girlfriend attempted to alert their neighbors in the attached residence of the fire, even though the neighbor was standing on the front porch. (*Id.*). The neighbor was ultimately alerted to the fire by a passing bus driver. (*Id.*). The neighbor ran inside

1

her half of the building to extract her sleeping two-year-old child from a second-floor bedroom, which had begun to fill with smoke. (*Id.*).

On September 5, 2012, police investigated a reported burglary at a hotel in Dubuque. (*Id.*). After searching the hotel room where defendant had been staying, police located a stolen television and evidence that defendant had manufactured methamphetamine there. (*Id.*). Defendant later admitted to stealing the television. (*Id.*). On November 19, 2012, police executed a search warrant at defendant's residence in Dubuque. (*Id.*, at 5). This search uncovered evidence that defendant had recently manufactured methamphetamine there as well. (*Id.*).

On January 9, 2013, a grand jury returned an Indictment charging defendant with three counts of manufacturing and attempting to manufacture methamphetamine after having been convicted of a felony drug offense. (Doc. 2). Count 1 further alleged that the offense occurred within 1,000 feet of a school and a playground. (*Id.*, at 1). On January 14, 2013, defendant appeared before the Honorable Jon S. Scoles, United States Chief Magistrate Judge, pleaded not guilty to all three counts, and was detained pending trial. (Doc. 8). On January 28, 2013, defendant changed his plea to guilty to Count 1 under a plea agreement with the government. (Docs. 20 & 22). On March 15, 2013, the Court accepted defendant's plea. (Doc. 24).

On April 26, 2013, the United States Probation Officer ("USPO") filed defendant's final presentence investigation report ("PSR"). (Doc 28). Defendant was, at that time, 43 years old. (*Id.*, at 2). Defendant was a lifelong Dubuque, Iowa resident. (*Id.*, at 22). Although he had earned a GED, his employment history was inconsistent, and he reported that he had been living on disability payments for the last two years. (*Id.*, at 23–24). Defendant had two children who resided with their respective mothers. (*Id.*, at 21–22). Defendant's younger child tested positive for methamphetamine at age two. (*Id.*, at 22). Defendant had used methamphetamine since age 30 with a history of using the drug daily, alongside a sporadic history of using alcohol, marijuana, and

2

cocaine. (*Id.*, at 23). Defendant was diagnosed with Tourette syndrome at age 20, with symptoms remaining consistent through the date of his conviction. (*Id.* at 22). Defendant otherwise had no relevant medical conditions or health issues at that time. Defendant's criminal history was extensive. The USPO noted that defendant had been "arrested nearly every year since age 18," (Doc. 28-2, at 2), and had been convicted of 31 offenses, including burglary, theft, domestic abuse assault, and drug related offenses. (Doc. 28, at 8–21). Defendant committed at least 16 of those offenses while on probation or parole. (*Id.*).

On June 3, 2013, the Court sentenced defendant. (Doc. 32). The PSR designated defendant as a career offender under United States Sentencing Guidelines ("USSG") Section 4B1.1 based on three prior felony convictions for controlled substance offenses: (1) a 1998 Iowa conviction for Possession With Intent to Deliver Amphetamine, (2) a 1998 Iowa conviction for Possession With Intent to Deliver Cocaine, and (3) a 2003 Illinois conviction for Unlawful Possession of Methamphetamine Manufacturing Chemicals. (Doc. 28, at 13–14, 17). Defendant was in criminal history category VI with a total offense level of 31, resulting in a guideline range of 188 to 235 months' imprisonment followed by six years to life on supervised release. (*Id.*, at 26). The Court sentenced defendant to 235 months, at the top of the guideline range, followed by 10 years on supervised released. (Doc. 33). The Court also ordered defendant to pay restitution in the amount of $40,803.64. (*Id.*, at 5).

On June 17, 2013, defendant timely appealed his judgment to the Eighth Circuit Court of Appeals, challenging both the application and constitutionality of the sentencing guidelines. (Doc. 36, at 2). On August 12, 2013, however, the Eighth Circuit granted defendant's motion to dismiss the appeal under Federal Rules of Appellate Procedure 42(b). (Doc. 48). On June 30, 2015, the Court sua sponte declined to reduce defendant's sentence in light of Amendment 782. (Doc. 51). The Court concluded that, because

3

defendant was sentenced as a career offender, he was ineligible for a reduction. (*Id.* at 3–4).

On May 8, 2016, defendant filed a motion to vacate, set aside, or correct sentence under Title 28, United States Code, Section 2255. *Zirkelbach v. United States*, No. 16-CV-1015-LRR, (Doc. 1). In a subsequent motion to amend his petition, defendant explained that his initial Section 2255 motion was misinformed and, notwithstanding, he argued that this Court improperly sentenced him under the career offender enhancement. *Id.* (Docs. 4 & 5). Defendant relied on *Mathis v. United States*, 136 S. Ct. 2243 (2016), which clarified the proper application of the categorical approach used in determining predicate offenses for the career offender enhancement. *Id.* (Docs. 4 & 5). On October 2, 2017, the Court denied defendant's initial motion and his motion to amend on the ground that they were untimely under the limitations period of Section 2255(f). *Id.* (Doc. 6). The Court noted that *Mathis* did not recognize a new right made retroactively applicable on collateral review, and thus concluded *Mathis* did not overcome the limitations period of Section 2255(f). *Id.* On November 6, 2017, defendant timely sought a certificate of appealability from the Eighth Circuit Court of Appeals. *Id.* (Doc. 8). On February 8, 2018, the Eighth Circuit dismissed the appeal. *Id.* (Doc. 13).

On March 18, 2021, defendant filed a pro se motion for compassionate release. (Doc. 53); *see also* (Doc. 58). On March 23, 2021, the Court appointed counsel to defendant. (Doc. 54). On April 6, 2021, defendant filed his amended motion now before the Court. (Doc. 61). Defendant, now 52 years old, is currently incarcerated at Forrest City Medium FCI with a projected release date of October 4, 2029.[1]

### III.   COMPASSIONATE RELEASE STANDARDS

A court's ability to modify a sentence after it has been imposed is limited. Title 18, United States Code, Section 3582(c)(1)(A) allows a court to modify a sentence

---

[1] *Find an Inmate.*, BOP, https://www.bop.gov/inmateloc.

4

through "compassionate release." A defendant may directly petition the court for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). Although some courts disagree, this Court holds that defendants are not required to administratively appeal a warden's denial and may satisfy Section 3582(c)(1)(A) by waiting 30 days from the date the warden receives their request before filing a motion for compassionate release in the courts. *United States v. Burnside*, 467 F. Supp. 3d 659, 667 (N.D. Iowa 2020) (compiling cases).

A court may only reduce the defendant's sentence, however, after considering the factors set forth in Title 18, United States Code, Section 3553(a) to the extent they are applicable, and finding that:

> (i) extraordinary and compelling reasons warrant such a reduction; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the [Bureau of Prisons] that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Defendants bear the burden of establishing eligibility for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

Congress delegated authority to the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction." 28 U.S.C. § 994(t). The Sentencing Commission's applicable policy statement defining "extraordinary and compelling reasons" is USSG Section 1B1.13—however, this statement is at least partly anachronistic. Section 1B1.13 predates the First Step Act of

5

the 2018 amendments to Section 3582(c)(1)(A) which enabled defendants to bring motions for compassionate release on their own behalf. In the absence of an update by the Sentencing Commission, the Court maintains—along with a majority of the Courts of Appeals[2]—that Section 1B1.13 is therefore not binding on motions filed by defendants after the First Step Act. *See United States v. Crandall*, No. 89-CR-21-CJW-MAR, 2020 WL 7080309, at *5 (N.D. Iowa Dec. 3, 2020). The Court recognizes, however, that Section 1B1.13 is still a helpful guidepost in determining whether extraordinary and compelling reasons exist to release a defendant.[3] *Id. at *6.* Courts of Appeals have similarly instructed that the Policy Statement, although not binding, "may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant." *United*

---

[2] *See United States v. Long*, 997 F.3d 342, 355 (D.C. Cir. 2021); *United States v. Brooker*, 976 F.3d 228, 234–37 (2d. Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281–84 (4th Cir. 2020); *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021); *United States v. Jones*, 980 F.3d 1098, 1109–11 (6th Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1181 (7th Cir. 2020); *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *United States v. McGee*, 992 F.3d 1035, 1050 (10th Cir. 2021). *But see United States v. Bryant*, 996 F.3d 1243, 1262 (11th Cir. 2021) (holding that section "1B1.13 is still an applicable policy statement for a Section 3582(c)(1)(A) motion, no matter who files it.").

The Eighth Circuit has thus far avoided directly addressing the issue in several recent cases: *United States v. Gater*, No. 20-2158, 2021 WL 2069968, at *2 (8th Cir. May 24, 2021) ("We need not decide whether the statute supersedes the list of circumstances set forth in the policy statement."); *United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) ("We need not determine whether the district court erred in adhering to the policy statements in §1B1.13"); *United States v. Loggins*, 966 F.3d 891, 892 (8th Cir. 2020), *reh'g denied* (Nov. 2, 2020).

[3] The "extraordinary and compelling" standard under Section 3582(c)(1)(A) carries the same meaning whether brought by the BOP or by a defendant. *See United States v. Ebbers*, 432 F. Supp. 3d 421, 427 (S.D.N.Y. 2020) ("[T]here is no indication in the text [of Section 3582(c)(1)(A)] or the [Sentencing Commission's] policy statements that the identity of the movant should affect the meaning of the phrase 'extraordinary and compelling reasons.'"); *accord United States v. Logan*, Case No. 97-CR-0099(3) (PJS/RLE), 2021 WL 1221481, at *4 (D. Minn. Apr. 1, 2021); *United States v. Grunig*, Case No. 09-CR-736 (HEA), 2021 WL 84489, at *2 (E.D. Mo. Jan. 11, 2021).

States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("[W]e do not see the absence of an applicable policy statement as creating a sort of Wild West in court, with every district judge having an idiosyncratic release policy.").

Section 1B1.13 provides that extraordinary and compelling reasons exist when the defendant is (1) suffering from a terminal illness; (2) suffering from a serious physical or medical condition, a functional or cognitive impairment, or physical or mental deterioration due to aging which substantially diminishes the defendant's ability to care for themselves within the facility and from which the defendant is not expected to recover; (3) at least 65 years old, experiencing serious deterioration due to age, and has served at least 10 years or 75 percent of their sentence; (4) experiencing a change in family circumstances, namely the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse who now requires the defendant's care; or (5) experiencing some other extraordinary and compelling reason as determined by the BOP. USSG § 1B1.13 cmt. n.1.

## IV. DISCUSSION

### A. *Exhaustion of Administrative Remedies*

Defendant submitted his request for compassionate release to the warden of his facility on August 1, 2020. (Doc. 61-5, at 3). On December 22, 2020, the warden denied this request. (*Id.*, at 1–2). The Court finds defendant has fulfilled the exhaustion requirement of Section 3582(c)(1)(A) because 30 days have lapsed from the date the warden received his request. *See Burnside*, 467 F. Supp. 3d at 665–67 (holding a defendant has met the exhaustion requirement if 30 days have passed since the defendant's request regardless of whether the warden denies the request).

### B. *Extraordinary and Compelling Reason*

In asserting an extraordinary and compelling reason for a sentence reduction, defendant cites two separate bases. First, defendant argues his current medical conditions

7

and corresponding vulnerability to COVID-19 compel a sentence reduction. (Doc. 66, at 4–19). Second, defendant argues that his current term of incarceration is the result of a misapplication of the sentencing guidelines under the applicable law at the time of his original sentence, resulting in a disparate and excessive sentence. (*Id.* at 19–30); *see also* (Doc. 73, at 2–5). The Court will address both bases in turn.

### *1. COVID-19 and Defendant's Health Conditions*

Defendant first argues an extraordinary and compelling reason for release is present because, even though he already contracted and recovered from COVID-19 and is now fully vaccinated against the virus, his various long-term health conditions put him at high risk of death if he is reinfected with the COVID-19 virus or a variant. (Doc. 66, at 5–19). The government argues these grounds are insufficient, emphasizing that defendant's vaccination and the declining threat of COVID-19 in the BOP substantially mitigate the risk defendant faces while incarcerated. (Doc. 71, at 5–18).

The Court has previously held that the threat of COVID-19 infection at a defendant's specific facility or within the BOP generally may constitute an extraordinary and compelling reason for compassionate release if the defendant is particularly susceptible to COVID-19 due to their age or underlying health conditions. *See Burnside*, 467 F. Supp. 3d at 667–71 (compiling cases). More recently, however, the Court recognized the waning threat COVID-19 poses within the BOP:

> Even if defendant's diabetes were serious or uncontrolled enough to raise concern about the complications it may pose *vis-à-vis* COVID-19, the Court would still deny release because the threat posed to prisoners by the virus has substantially diminished in recent months. The BOP has gone to great lengths to contain the virus and is administering vaccines throughout its facilities. Every indication is that the spread within the BOP—particularly at defendant's facility—is now minimal. The risk posed to defendant by COVID-19 is therefore minimal.

*United States v. Saeed*, 15-CR-2005-CJW-MAR-2, (Doc. 214) (Mar. 18, 2021). The "vast majority" of courts have concluded that an inmate's vaccination significantly

diminishes the possibility that COVID-19 conditions will constitute an extraordinary and compelling reason warranting compassionate release. *United States v. Singh*, No. 4:15-CR-00028-11, 2021 WL 928740, at *3 (M.D. Pa. Mar. 11, 2021) (denying release for inmate with obesity and Type II diabetes when inmate had received both doses of the Moderna vaccine); *see also United States v. Peel*, No. 14-cr-00192 KJM CKD, 2021 WL 2875658 (E.D. Cal. July 8, 2021) (denying relief to an inmate in his seventies suffering from hypertension, chronic obstructive pulmonary disease, benign hypertrophy of prostate, chronic viral hepatitis C, and malignant neoplasm of prostate, ultimately because he received a vaccine); *United States v. Hardaway*, No. CR 15-60(2) ADM/BRT, 2021 WL 2680245, at *2 (D. Minn. June 30, 2021) ("Any risk of [defendant] becoming reinfected and seriously ill from COVID-19 has been substantially reduced because he is now fully vaccinated."); *United States v. Williams*, No. 16-251 (DWF/KMM), 2021 WL 1087692, at *3 (D. Minn. Mar. 22, 2021) (same); *United States v. Godoy-Machuca*, No. CR-16-01508-001-PHX-DJH, 2021 WL 961780, at *2 (D. Ariz. Mar. 15, 2021) (denying relief to defendant with Type II diabetes, hypertension, obesity, and other ailments because defendant was fully vaccinated and had already once contracted and recovered from COVID-19); *United States v. McGill*, No. SAG-15-0037, 2021 WL 662182, at *5 (D. Md. Feb. 19, 2021) (same); *United States v. Wakefield*, No. 1:19-cr-00095-MR-WCM, 2021 WL 640690, at *3 (W.D.N.C. Feb. 18, 2021) (same).

The Centers for Disease Control and Prevention ("CDC") states that the "[r]isk of SARS-CoV-2 infection is minimal for fully vaccinated people."[4] Specifically, the CDC indicates that the Moderna vaccine is highly and widely effective, preventing 94.1% of infections in clinical trials across diverse demographics.[5] Furthermore, even without

---

[4] CDC, *Guidance for Fully Vaccinated People*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/fully-vaccinated-guidance.html.

[5] CDC, *Moderna*, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/Moderna.html.

9

vaccination, "[c]ases of reinfection with COVID-19 have been reported, but remain rare."[6]

Defendant asserts, and his medical records confirm, that he is 52 years old and suffers from several long-term physical health conditions—type II diabetes, obesity, hypertension, and hyperlipidemia. *See* (Doc. 66, at 9–19). He argues these conditions increase his vulnerability to COVID-19. (*Id.*). Defendant has at least two health conditions which are known risk factors relevant to COVID-19 (type II diabetes and obesity) and one potential risk factor (hypertension).[7] Hyperlipidemia is not identified by the CDC as being relevant to COVID-19. The Court also notes defendant's age.[8] Defendant's medical records also indicate, however, that he already contracted COVID-19 in December 2020, remained asymptomatic, and recovered without complications. (Doc. 72-2, at 21-22, 120). Further, defendant is now fully vaccinated against COVID-19, having received his second dose of the Moderna vaccine on March 30, 2021. (Doc. 72–3).

In light of the information available to the Court at this time with respect to the COVID-19 pandemic taken with the facts here, this ground for release is unavailing. First, defendant's concerns about a disproportionate risk of contracting the virus are unfounded. Defendant asserts the BOP struggled to manage the virus at his facility during the height of the pandemic. (Doc. 66, at 6–8). Even so, there is now only one active case of COVID-19 among the inmates at Forrest City Medium FCI.[9] The COVID-19 vaccine has been accessible to inmates for months, and many inmates at defendant's

---

[6] CDC, *Reinfection*, https://www.cdc.gov/coronavirus/2019-ncov/your-health/reinfection.html.

[7] CDC, *Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[8] CDC, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html.

[9] *COVID-19*, BOP, https://www.bop.gov/coronavirus.

10

facility have taken the vaccine.[10]  The waning of the pandemic generally and at Forrest City Medium FCI specifically—attributable to the ongoing efforts of the BOP to safely manage its facilities and administer vaccines—strongly militates against the threat that defendant will again be exposed to the virus.

Second, because the information currently available to the Court shows that vaccination significantly diminishes the risk COVID-19 poses, even to those who are more vulnerable absent the vaccine, the Court gives minimal weight to the threat COVID-19 poses to defendant after becoming fully vaccinated.[11]  Further, defendant has already contracted and recovered from COVID-19 with little to no complications.  (Doc. 72-2, at 21-22, 120).  "This Court and other courts have denied compassionate release when the defendant had only an asymptomatic or minor case of COVID-19 with no indication that defendant's health will deteriorate in the future."  *United States v. Sampson*, No. 8-CR-2026-CJW-MAR, 2020 WL 4207555, at *4 (N.D. Iowa July 22, 2020) (compiling cases).  Thus, even if defendant was not vaccinated, the fact that defendant contracted and recovered from COVID-19 without significant complications weighs against a finding that extraordinary and compelling reasons exist for release.  Further, defendant's health

---

[10] BOP statistics indicate that 1,572 inmates between Forrest City Medium FCI and Forrest City Low FCI (together "Forest City FCC") are currently inoculated against COVID-19.  *COVID-19*, BOP, https://www.bop.gov/coronavirus.  There are currently 1,415 inmates incarcerated at Forrest City Medium FCI and 1,448 at Forrest City Low FCI.  *Statistics*, BOP, https://www.bop.gov/about/statistics.  Thus, in total, the BOP has inoculated roughly 55 percent its 2,863 inmates within the Forrest City FCC.

[11] Although hopeful that the rollout of vaccines will continue to suppress the pandemic, the Court acknowledges the ongoing possibility of an emergent mutation or variant strain of the COVID-19 virus.  *See* (Docs. 66, at 17–18; 73, at 1).  At this time, however, the CDC states, "So far, studies suggest that the current authorized vaccines work on the [four] circulating variants [in the United States.]"  CDC, *Variants of the Virus*, https://www.cdc.gov/coronavirus/2019-ncov/variants/variant.html.  Thus, unless and until substantial information arises to the contrary, the current threat of variants of the COVID-19 virus does not change the Court's analysis.

conditions are not extraordinary and compelling on their own, but rather, are fairly commonplace.

In sum, the threat presented by COVID-19 has greatly subsided in recent months, defendant is fully vaccinated, and he has already recovered from his prior infection. All these factors undermine defendant's motion here, even accepting his stated health risks. Thus, the Court denies defendant's amended motion on this first basis.

### 2. *Defendant's Original Sentence*

Defendant also asserts that his current term of incarceration is the result of a misapplication of the sentencing guidelines under the applicable law at the time of his original sentencing, which resulted in an excessive sentence disparate from those who were not victims of legal error. (Doc. 66, at 19–30). This circumstance, defendant argues, compels a sentence reduction under compassionate release, essentially as a corrective measure. (*Id.*); *see also* (Doc. 73, at 2–5). Binding precedent, however, holds that a sentencing error is not within the meaning of "extraordinary and compelling reasons" under Title 18, United States Code, Section 3582(c)(1)(A). *United States v. Fine*, 982 F.3d 1117, 1118–19 (8th Cir. 2020). The depth and sophistication of defendant's argument on this issue, however, warrants a thorough discussion with respect to the Court's denial of defendant's amended motion on this basis.

Defendant asserts the Court erroneously designated him a career offender by misconstruing his applicable number of predicate "controlled substance offenses." (Doc. 66, at 19–30). He alleges this error unduly enhanced his sentence and, furthermore, precluded him from receiving a sentence reduction under Amendment 782. *Id.* Defendant identifies two alleged errors on this issue. First, defendant contends his Iowa convictions should only have counted as a single predicate offense under USSG Section 4A1.2(a)(2) because they arose from the same charging instrument. (Doc. 66, at 21–22). Second, defendant argues his Illinois conviction was under a controlled substance statute that is impermissibly broader than the applicable federal definition of a "controlled

12

substance offense" for the purpose of Section 4B1.2's career offender enhancement. (*Id.* at 22–26). Defendant analyzes the latter issue mainly through the lens of *Mathis v. United States*, 136 S.Ct. 2243 (2016), which clarified the "categorical approach" that courts use to determine whether a prior conviction qualifies as a "controlled substance offense." *Id.* Defendant concedes, however, that *Mathis* merely clarified precedent which was "always the law." (Doc. 73, at 4). Defendant also cites *United States v. Walterman*, 343 F.3d 938, 940–41 (8th Cir. 2003), which found that an Iowa statute penalizing possession of a precursor chemical not listed in the Controlled Substance Act's "listed chemicals" was overbroad, thus rendering Section 4B1.2(b) inapplicable. (Doc. 66, at 25–26).

Defendant alleges he did not fully understand the errors in his case until *Mathis* came down in 2016. By that time, however, the limitations period of Title 28, United States Code, 2255(f) barred him from making a desired collateral attack. Indeed, the Court denied his motion to vacate, set aside, or correct sentence under Section 2255 as time-barred. *Zirkelbach v. United States*, No. 16-CV-1015-LRR, (Doc. 6). Now, defendant's argument relies on the catch-all provision in USSG Section 1B1.13 Application Note 1(D); that is, he urges the Court to grant a sentence reduction for "an extraordinary and compelling reason other than, or in combination with" the circumstances explicitly listed. *See Crandall*, 2020 WL 7080309 at *6 (clarifying that defendants may rely on Application Note 1(D) but "should not stray far from the categories explicitly listed; health, age, and familial circumstances"); *see also, e.g.*, *United States v. Urkevich*, 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019) (compiling cases).[12] Thus, defendant essentially asks the Court to use Application Note

---

[12] Although not binding on defendants' motions, the Court notes that the BOP has identified several nonexclusive factors to determine whether "other" particularly extraordinary and compelling reasons exist per Application Note 1(D): the defendant's criminal and personal history, nature of his offense, disciplinary infractions, length of sentence and amount of time served with respect to proximity to the completion of sentence, current age and age at the time of offense and sentencing, release plans, and "[w]hether release would minimize the severity of

13

1(D) to circumvent the timeliness requirements that barred these arguments in his 2255 proceedings. The Court finds it inappropriate to do so.

Compassionate release is not an end run around Section 2255. Defendants generally must challenge the validity of a federal conviction under Section 2255. *See Lopez-Lopez v. Sanders*, 590 F.3d 905, 907 (8th Cir. 2010); *Abdullah v. Hendrick*, 392 F.3d 957, 959 (8th Cir. 2004); *United States v. Lurie*, 207 F.3d 1075, 1077–78 (8th Cir. 2000). Section 2255 upholds a robust statutory scheme carefully tailored to challenge the legality of a sentence in a timely manner. Section 2255(h) provides for second or successive motions under Section 2255 under certain circumstances. Section 2255(e) contains the statute's "saving clause," which permits a petition under Title 28, United States Code, Section 2241 if the defendant shows the Section 2255 remedy to be inadequate or ineffective to test the legality of a conviction or sentence. *See, e.g.*, *Charles v. Chandler*, 180 F.3d 753, 756–58 (6th Cir. 1999). Also, the doctrine of equitable tolling may apply to the limitations period of Section 2255 in certain unique circumstances. *See* "Equitable Tolling Applied to Limitations Period of 28 U.S.C.A. § 2255," 16A FED. PROC., L. ED. § 41:518; *see also E.J.R.E. v. United States*, 453 F.3d 1094, 1098 (8th Cir. 2006).

Given that Congress carefully designed and designated Section 2255 for courts and defendants alike to follow in re-evaluating the validity of a sentence after it is imposed—which includes procedural limitations periods governing the circumstances for doing so—it is difficult to fathom that Congress also intended for Section 3582(c)(1)(A) to allow courts and defendants to do the very same thing, yet without a limitations period. The Eighth Circuit has addressed this issue in *United States v. Fine*, where a defendant sought

---

the offense." BOP Program Statement 5050.50, at 12 (2019), available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf; *see Reno v. Koray*, 515 U.S. 50, 61, (1995) (holding that BOP program statements are entitled to "some deference" when they reflect a "permissible construction of the statute") (quotations omitted).

a sentence reduction under Section 3582(c)(1)(A) on the ground that he was erroneously designated as a career offender. The Eighth Circuit stated:

> [Defendant Fine] maintains that the district court erred in concluding that it could not reduce his sentence under § 3582(c)(1)(A)(i) based on his arguments about the proper interpretation of the career offender guideline. The law is unsettled in this circuit about what reasons a court may consider extraordinary and compelling under § 3582(c)(1)(A)(i), but we need not address the broader issue here. The district court considered and properly rejected the grounds proffered by Fine.
>
> Fine renews his argument that he is not a career offender under the guidelines. He says that his prior convictions were not for a "controlled substance offense." Fine contends that the Kansas statute under which he was convicted is overbroad and encompasses some crimes that do not qualify as a controlled substance offense.
>
> Although Fine's argument relies in part on decisions that were issued after his sentencing, including *Mathis v. United States*, --- U.S. ----, 136 S. Ct. 2243, 195 L.Ed.2d 604 (2016), his challenge to the career offender determination was still a challenge to his sentence. A federal inmate generally must challenge a sentence through a § 2255 motion, and a post-judgment motion that fits the description of a motion to vacate, set aside, or correct a sentence should be treated as a § 2255 motion. The substance of Fine's argument was available to him at sentencing, but even an intervening change in the law does not take a motion outside the realm of § 2255 when it seeks to set aside a sentence.
>
> Fine previously filed an unsuccessful § 2255 motion, and he did not seek authorization from this court to file a successive motion in this case as required by 28 U.S.C. § 2255(h). The district court was therefore correct that his challenge to the career offender determination and resulting sentence was an unauthorized successive motion to vacate, set aside, or correct a sentence.

*United States v. Fine*, 982 F.3d 1117, 1118–19 (8th Cir. 2020) (citations omitted).

The United States District Court for the District of Minnesota applied *Fine* when denying a defendant's compassionate release motion where that defendant similarly argued he was serving an invalid sentence. *United States v. Logan*, Case No. 97-CR-

15

0099(3) (PJS/RLE), 2021 WL 1221481, at *5–6 (D. Minn. Apr. 1, 2021). That court persuasively explained its reasoning:

> There is no evidence that Congress amended § 3582(c)(1) to give prisoners the opportunity to argue—again and again and again—that they should have received a shorter sentence based on the law and facts that existed at the time that they were sentenced. . . .
>
> Defendants enjoy a range of safeguards that are intended to prevent or correct unjust sentences, including the right to a sentencing hearing (and the many rights that defendants are afforded in connection with a sentencing hearing), the right to directly appeal a sentence, and the right to challenge a sentence in a § 2255 proceeding. To allow a defendant to use a compassionate-release request as yet another avenue to attack the legality or validity of a sentence would, as a practical matter, render nugatory the carefully crafted rules that govern those safeguards, such as rules about preserving issues for direct appeal, filing second or successive habeas petitions, and obtaining certificates of appealability.

*Id.*; *see also United States v. Handerhan*, 789 Fed. App'x 924, 926 (3rd Cir. 2019) ("[Section] 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity.").

Defendant points to two district courts that considered sentencing errors to be an "extraordinary and compelling" reason for a reduced sentence under Section 3582(c)(1)(A)—*United States v. Chavez-Chavez*, No. 1:00-cr-0033-BLW, (Doc. 156) (D. Idaho May 27, 2021) (providing no substantive analysis of the law) and *United States v. Trenkler*, 1:92-cr-10369-WES, (Doc. 805) (D. Mass. May 6, 2021). (Doc. 74); *see also United States v. McGee*, 992 F.3d 1035, 1046–51 (10th Cir. 2021) (holding that a district court may consider the propriety of a defendant's original sentence under Section 3582(c)(1)(A)(i). These cases, however, cannot overcome the binding Eighth Circuit precedent in *Fine* which mandates the opposite result.

Defendant nevertheless argues the Court must grant a reduction here in the name of justice, stating, "Errors like the one here, that go unnoticed by all for nearly a decade,

16

are 'extraordinary'; if they are not, something is wrong with the system." (Doc. 73, at 4). As this Court has endeavored to illustrate, compassionate release is but one part of a grander statutory system that Congress designed and by which the judicial branch is bound. Citizens, through the political process, must petition Congress to change that system, not the courts.

The Court has previously expressed its skepticism of expanding compassionate release into a discretionary parole system. *Crandall*, 2020 WL 7080309, at *6. Here, in light of *Fine* and its underlying separation of powers rationale, the Court refuses to expand compassionate release into an alternative habeas system. Doing so would impermissibly expand this Court's authority and undermine the system within which Congress intentionally and explicitly established the parameters for direct appeals and habeas petitions. This component of defendant's amended motion ultimately functions as an unauthorized motion to vacate, set aside, or correct a sentence under Section 2255. *See Rey v. United States*, 786 F.3d 1089, 1091 (8th Cir. 2015); *see also Godoski v. United States*, 304 F.3d 761, 763 (7th Cir. 2002) ("A post-conviction filing that fits the description of § 2255 *is* a motion under § 2255, and subject to its restrictions, no matter what the pleader says.") (citation omitted, emphasis in original). Thus, the Court denies defendant's amended motion on this second basis. In the absence of an extraordinary and compelling reason, the Court cannot grant compassionate release.[13]

---

[13] In light of its conclusion, the Court need not analyze defendant's motion under Section 3553(a).

## V. CONCLUSION

For these reasons, the Court **denies** defendant's amended motion for compassionate release. (Doc. 61). To the extent it is not superseded by his amended motion, the Court also **denies** his pro se motion for compassionate release for the same reasons. (Doc. 53). Defendant must serve the remainder of his term of incarceration as previously directed. (Doc. 33).

**IT IS SO ORDERED** this 11th day of August, 2021.

_____
C.J. Williams
United States District Judge
Northern District of Iowa